Alvin BROOKS, Joy Lieberman, Bill R. Beemont, Samuel C. Houston, Joan Krauskopf, Jean Collins, Marie Burrow, Rev. Donald Rau, John Al Rodriguez, Jerry Puchta, and Frank J. Cason, individually and collectively known as the Missouri Commission on Human Rights, Plaintiffs-Appellants,

v.

Nancy POOL–LEFFLER, Vice President and General Manager, KSHE, Inc., and KSHE, Inc., a corporation, Defendants-Respondents.

No. 44037.

Missouri Court of Appeals,
Eastern District,
Division Four.

May 18, 1982.

Motion for Rehearing and/or Transfer
Denied June 18, 1982.

114

John Ashcroft, Atty. Gen., Suzanne M. Boersig, Rosalynn Van Heest, Asst. Attys. Gen., Jefferson City, for plaintiffs-appellants.

Valerie Held Rapp, St. Louis, for defendants-respondents.

PUDLOWSKI, Judge.

Appellant, the Missouri Commission on Human Rights (hereinafter the "Commission"), filed a petition to enforce an administrative subpoena duces tecum in the circuit court of St. Louis County. An order to show cause why the subpoena should not be enforced was entered by the circuit court against the respondent, KSHE, Inc., a radio station located in St. Louis County. KSHE filed an answer and memorandum with the circuit court in opposition to the enforcement of the administrative subpoena. The circuit court denied the petition and dismissed the cause.

The relevant facts are as follows. In September, 1978, an organization called the St. Louis Broadcast Coalition contacted the Commission and suggested that it investigate employment practices in the electronic media of St. Louis. There was apparently, no reference to or complaint about KSHE. The Commission accepted the suggestion and began its study of the St. Louis media early in 1979. One bureaucratic investigative technique employed by the Commission was the distribution of questionnaires to the various television and radio stations in the area. The questionnaires were to be answered by women and minority employees of the stations. The Commission sought information from these employees on employment history, salary and personal experience with employment discrimination.

On February 9, 1979 the Commission sent a set of the aforementioned questionnaires to KSHE. On February 19, KSHE contacted the Commission in an attempt to determine by what authority the Commission was conducting the investigation. The Commission responded on March 1, 1979 claiming that under §§ 296.030(1) and (9)

RSMo (1978) [1] the Commission was authorized to perform research for the purpose of minimizing, eliminating or preventing discriminatory employment practices. KSHE refused to cooperate with the Commission's study of the electronic media in St. Louis.

On April 21, 1980 the Commission filed a discrimination complaint against KSHE pursuant to § 296.030(7) and 4 CSR 180–2.-010(1), Missouri Code of State Regulations. Section 296.030 is a general provision which specifies the powers and duties of the Commission. Paragraph (7) of this section provides that the Commission has the power, "to receive, investigate, initiate and pass upon complaints alleging discrimination in employment . . . ." § 296.030(7). Pursuant to this provision and the rule-making power under § 296.030(6), the Commission adopted 4 CSR 180–2.010(1). This regulation provides that the Commission ". . . may, sua sponte, issue a complaint whenever it has reason to believe an unlawful discriminatory practice is being followed." 4 CSR 180–2.010(1). On May 29, 1980, KSHE sought additional information from the Commission with respect to the factual basis for the complaint. The Commission responded that a study of work force characteristics [2] for KSHE and the St. Louis area revealed statistical disparities for women and minorities in various job classifications.[3] The Commission went on to state that, "a formal investigation of the subject matter is being conducted to ascertain whether or not the disparate statistics are an indicator of discrimination." Finally, the Commission's response stated that, "our investigation will consist of gathering current statistics, interviewing personnel, and on-site observation toward making a finding." It is clear that the only basis for the complaint is the statistical

---

1. All statutory references are to the Revised Statutes of Missouri (1978) unless otherwise indicated.

2. Statistical information on workforce characteristics was obtained by the Commission from the Federal Communications Commission.

3. The record before us does not reveal the nature of the disparities in any detail. In fact, the Commission's complaint merely alleges that a "substantial disparity" between women and minorities as compared to white males exists in certain job classifications.

disparity.[4] It is also clear that the complaint was filed by the Commission to facilitate its investigation of KSHE, which is merely one part of the Commission's larger investigation of the electronics media in the St. Louis area.

After the complaint was filed the Commission sent interrogatories and other requests for information to KSHE. By letter dated August 25, 1980, KSHE refused to provide any of the requested information. On September 22, the Commission issued an administrative subpoena duces tecum commanding the vice-president and general manager of KSHE, Nancy Pool-Leffler, to appear at the offices of the Commission with the employment and personnel records of KSHE. KSHE refused to comply with the subpoena. In October, 1980, the Commission filed a petition for an order to enforce the administrative subpoena in the circuit court of St. Louis County.

KSHE raised four arguments in opposition to the Commission's petition. First, KSHE asserts that the administrative subpoena was issued by the Commission as part of an investigation which is beyond the statutory authority of the Commission, because no valid discrimination complaint was filed. Second, KSHE claims that the investigation, and thus the subpoena is prohibited because the discrimination complaint was not filed within the time prescribed by statute. Third, KSHE argues that the complaint is so ambiguous it is impossible to determine the relevance of the information sought through the subpoena. Fourth, KSHE contends that the subpoena is void on its face for lack of specificity. After a hearing on the Commission's petition, the circuit court denied the petition and dismissed the cause without specifying the basis for its action. This appeal followed.

The relevant facts in this matter are not in dispute. All the facts were presented to the circuit court in documents filed with the court. Trial was before the court, and there was no conflicting testimony to consider. In essence the hearing was upon stipulated facts, and the judgment of the circuit court will be affirmed unless the court erroneously declared the law, or erroneously applied the law to the facts. *Schroeder v. Horack*, 592 S.W.2d 742, 744 (Mo. banc 1979); *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). The circuit court did not specify its reasons for dismissing the Commission's petition. Our primary concern, however, is with the correctness of the result—not the route by which it is reached. *Maryland Plaza Redevelopment v. Greenberg*, 594 S.W.2d 284, 286 (Mo.App. 1979). Thus, the trial court should be affirmed if it is correct upon any theory. *Hathman v. Waters*, 586 S.W.2d 376, 384 (Mo.App.1979). We affirm the decision of the trial court.

I

First we find that the Commission is not authorized by statute to issue a complaint sua sponte. In reaching our decision, we rely upon the language of the statute and sound principles of statutory interpretation.

It is well settled that the cardinal rule of statutory interpretation is to ascertain the intent of the lawmakers and give effect to that legislative purpose. *Bank of Crestwood v. Gravois Bank*, 616 S.W.2d 505, 510 (Mo. banc 1981). To ascertain the legislative intent, we must look to the words of the statute, and attribute to them their plain meaning. *Id.; Kieffer v. Kieffer*, 590 S.W.2d 915, 918 (Mo. banc 1979). Turning to the words of the statute in question we find that § 297.030 provides the powers and duties of the Commission. It states in part that the Commission has the power "to receive, investigate, *initiate*, and pass upon complaints alleging discrimination in employment ...." § 296.030(7) (emphasis added). This provision seems to indicate a legislative intent that the Commission have authority to *file* complaints on its own behalf. A problem arises, however, when we examine § 296.040, which specifies the pro-

---

4. The St. Louis Broadcast Coalition's suggestion to the Commission that it investigate the electronic media cannot serve as a basis for the complaint against KSHE because the Coalition never accused KSHE of perpetrating any unfair employment practices.

cedure for filing, investigating and resolving discrimination complaints.

■ Section 296.040(1) provides that a complaint may be *filed* by: "any person claiming to be aggrieved by an unlawful employment practice . . . , the complainant's agent or attorney, or the attorney general." The Commission is not mentioned. When a statute directs performance of specific acts by an enumerated class of persons, it implies that persons not included in said class have no authority to perform the act. *Parvey v. Humane Society*, 343 S.W.2d 678, 681 (Mo.App.1961); 82 C.J.S. Statutes § 333, pp. 667–668. In other words, the express mention of one thing implies the exclusion of another. *Harrison v. MFA Mut. Ins. Co.*, 607 S.W.2d 137, 146 (Mo. banc 1980). In § 296.040(1) one state entity, is specifically authorized to *file* discrimination complaints—the attorney general. The clear inference is that the legislature did not intend to authorize the Commission to file discrimination complaints on its own behalf.

Looking to the plain language of the statute, there appears to be a conflict between § 296.030(7) and § 296.040(1). It is incumbent upon us to reconcile and harmonize the provisions in conflict if it is reasonably possible. *Goldberg v. Administrative Hearing Comm.*, 609 S.W.2d 140, 144 (Mo. banc 1980). To this end we should give effect to the specific provision over the general, and reconcile the provisions with a view to effectuate the legislative purpose. *Brooks v. Cooksey*, 427 S.W.2d 498, 503 (Mo.1968).

Section 296.040 sets out in detail the method by which the Commission is to exercise its authority, and § 296.030 is a list of the powers and duties of the Commission. The former provision specifies the procedure for exercising the powers listed in the latter provision. There is no doubt that § 296.040 is the more specific, controlling provision. Thus, we find that, since the Commission is not authorized to *file* complaints under § 296.040(1), it may not do so under the auspices of § 296.030(7). Our

holding, however, does not operate to read the term "initiate" out of § 296.030(7); for we find that the Commission may "initiate" complaints, even though it cannot "file" complaints.

■ The fundamental flaw with the Commission's contention is its assumption that the term "initiate" used in § 296.-030(7), is synonymous with the word "file" used in § 296.040(1). It is not. We believe that the legislature chose to use the word "initiate" in § 296.030(7), rather than "file" for a reason. Looking to the statute we find that the Commission is empowered "to obtain upon request and utilize the services of all governmental departments and agencies." § 296.030(5). The Commission is also authorized to "initiate" discrimination complaints. § 296.030(7). The attorney general is authorized to file complaints under § 296.040(1). Furthermore, in any hearing on the complaint before a hearing examiner or Commission panel, the attorney general shall present the case in support of the complaint. § 296.040(4). The statutory scheme reveals a legislative determination that the Commission and the attorney general shall work together to effectuate the purposes of the statute. With this in mind we find that the statute authorizes the Commission to initiate complaints by requesting the attorney general to file a discrimination complaint pursuant to § 296.-040(1). The Commission cannot, however, file complaints sua sponte.

The Commission next contends that it must have the power to file complaints in order to effectuate the broad remedial purpose of chapter 296. As a result, the Commission claims it properly exercised its power under § 296.030(6),[5] when it adopted 4 C.S.R. 180–2.010(1), Missouri Code of State Regulations. This regulation provides that the Commission may file discrimination complaints sua sponte. We do not agree.

■ We recognize that remedial legislation should be broadly and liberally con-

---

5. Section 296.030(6) provides that the Commission has the power: "To adopt, promulgate, amend, and rescind suitable rules and regulations to carry out the provisions of this chapter and the policies and practices of the Commission in connection therewith."

strued to effect its plain purpose. *Hudson v. State Security Ins. Co.*, 555 S.W.2d 859, 861 (Mo.App.1977). The legislature, however, specifically defined the class of persons who have standing to file complaints, and it did not include the Commission. Regulations may be promulgated only to the extent of and within the delegated authority of the statute involved, and if the regulation is in conflict with the statute it is invalid. *State ex rel. River Corp. v. State Tax Comm.*, 492 S.W.2d 821, 825 (Mo.1973). The Commission's adoption of a regulation such as Title 4 CSR 180–2.010(1), which is contrary to the statute is a nullity and the regulation is invalid.

■ The Commission also contends that it qualifies as a person "... aggrieved by an unlawful employment practice ..." under § 296.040(1). The Commission argues that an act of discrimination in employment injures the people of the State of Missouri. Thus, the Commission is an "aggrieved" person on behalf of the people. We agree with the Commission, that discrimination is injurious to the state itself, and that the statute reveals a strong governmental interest in preventing such injury. It is not necessary, however, to label the Commission an "aggrieved" person in order to protect that governmental interest. Again the Commission ignores the attorney general. The attorney general is the chief legal prosecutor for the people of the State of Missouri. In § 296.040(1), the legislature entrusted him with the duty and authority to protect the governmental interest by conferring upon him standing to prosecute discrimination complaints. The Commission has offered no evidence to indicate that the attorney general has failed in this trust. Since the attorney general is specifically granted the power to file a discrimination complaint on behalf of the people, we see no

reason to disregard the legislature's omission of the Commission from the class of persons who can file such complaints under § 296.040(1). Thus, we find that the Commission is not an "aggrieved" party under § 296.040(1).

We defer to the legislative determination as to who shall have standing to file a claim or cause of action created by statute. The Commission was not specifically granted standing in the statute, and unless the legislature in futuro specifically denominates the Commission as a party authorized to file a complaint, the Commission cannot issue a discrimination complaint sua sponte.

II

Finding that the Commission cannot file a discrimination complaint sua sponte, it follows that any action taken by the Commission which is dependent upon the complaint is beyond the scope of the statute. The Commission in anticipation of such resolution argues in the alternative that its power to issue a subpoena duces tecum and seek judicial enforcement is not dependent upon the fact that a valid complaint is on file.[6] The Commission claims it has the authority to issue, and seek enforcement, of a subpoena duces tecum directed to KSHE, even though no valid discrimination complaint was filed.

The Commission's argument calls into direct question the parameters of its power to issue an administrative subpoena duces tecum.[7] This is a matter of first impression in the State of Missouri. To resolve it we rely primarily upon principles of statutory interpretation. In addition, we look for assistance in the law of other jurisdictions which have considered this question.

**6.** Based upon this position the Commission has adopted a regulation which provides that it has the power to issue subpoenas in the course of an investigation conducted prior to the issuance of a notice of hearing under § 296.-040(3). 4 CSR 180–2.010(9).

**7.** In this discussion, when we say or make reference to the Commission's power to "issue

a subpoena", we are referring to its power to issue and obtain judicial enforcement of that subpoena. Indeed, if no governmental body has the authority to enforce the subpoena, the instrument cannot properly be called a subpoena. *Commonwealth v. Wilson*, 158 Pa.Super. 198, 44 A.2d 520 (1945); 97 C.J.S. Witnesses § 20, pp. 370–371.

■ Initially we note that the Commission has the power to issue a subpoena duces tecum under § 296.030(8),[8] but the statute does not authorize the Commission to enforce that subpoena. Enforcement must come through the courts.[9] When the power of the circuit court is invoked to enforce an administrative subpoena, the court must guard against the abusive use of its process. *Cascio v. Beam*, 594 S.W.2d 942, 949 (Mo. banc 1980). Enforcement of an administrative subpoena, which the agency in question has no authority to issue, is clearly an abuse of the court's process.

■ The Commission's authority to issue a subpoena duces tecum is limited. An administrative agency possesses no inherent power to issue subpoenas. It may do so only as authorized by statute. *Commonwealth ex rel. Margiotti v. Orsini*, 368 Pa. 259, 81 A.2d 891 (1951); F. Cooper. *State Administrative Law* Vol. 1, p. 295 (1965). This rule is merely a specific application of the general rule that an administrative agency has no more authority than that granted to it by statute. *State Bd. of Reg. For Healing Arts v. Masters*, 512 S.W.2d 150, 161 (Mo.App.1974). The power to issue an administrative subpoena may be expressly or impliedly conferred in the statute. *Curdt v. Mo. Clean Water Comm.*, 586 S.W.2d 58, 60 (Mo.App.1979); 73 C.J.S. Public Administrative Bodies and Procedure § 79, p. 405. Implication of the subpoena power is not proper, however, simply because that power would facilitate the accomplishment of an end the court deems beneficial. *Wilson v. McNeal*, 575 S.W.2d 802, 809 (Mo.App.1978). The subpoena power may be implied only if it necessarily follows from the language of the statute. *Id.*, 73 C.J.S. Public Administrative Bodies and Procedures § 79, p. 405. The afore-

mentioned rules of construction reveal the complexity of the issue. On the one hand we seek to effectuate the statutory purpose intended by the legislature. On the other, we must temper our judgment in recognition of the fact that it is for the legislature, not the judiciary, to establish the means through which the statutory purpose is to be achieved. With these principles in mind we turn to consider the issue at hand. At what point during the complaint procedure under § 296.040, can the Commission issue a subpoena duces tecum?

We begin by reviewing the statutory complaint procedure. As discussed earlier, the procedure begins when a complaint is filed with the Commission by a member of the class of persons specified in § 296.-040(1). Prior to this filing, however, the attorney general or the Commission are certainly free to conduct investigations to determine whether a complaint should be initiated or filed. After the complaint is filed, the executive director of the Commission is directed to make "... prompt investigation in connection therewith." § 296.040(2). "If the director determines after such investigation that probable cause exists for crediting the allegations of the complaint, the director shall immediately endeavor to eliminate the unlawful employment practice complained of by conference, conciliation and persuasion ...." § 296.040(2). If the attempted conciliation fails, the chairman of the Commission shall issue and serve a written notice of hearing upon the party charged with the unlawful employment practice (the respondent), requiring the party to answer the charges before a panel of three commissioners or a hearing examiner. § 296.040(3). The case in support of the complaint shall be presented by the attorney general. § 296.040(4). Under § 296.-

8. Section 296.030(8) provides that the Commission shall have the power; "To hold hearings, subpoena witnesses, compel their attendance, administer oaths, to take the testimony of any person under oath, and, in connection therewith, to require the production for examination of any books or papers relating to any matter under investigation or in question before the commission."

9. The Commission acknowledges this fact in its own regulations. Title 4 C.S.R. 180–2.020(4) provides that subpoenas shall be enforced according to the provisions of chapter 536, RSMo (1978). Section 536.077 provides that the agency shall enforce a subpoena by application to the judge of the appropriate court.

040(6), hearings shall be conducted in the manner provided by the statute on administrative procedure and review, chapter 536, RSMo.

■ This review of the complaint procedure reveals that there are three separate and distinct stages of investigation by the Commission. The first stage is prior to the filing of a complaint. Section 296.030(9) provides that the Commission has the power "to issue publications and the results of studies and research which will tend to promote good will and minimize or eliminate discrimination." This provision clearly indicates that the Commission may investigate a business or industry even though no complaint is on file. The second stage of investigation is after the filing of a complaint, and pursuant to the conciliation stage of the complaint procedure. § 296.040(2). The third stage of investigation is after the notice of hearing is issued under § 296.-040(3). The investigation in the third stage is in the context of an administrative hearing, and is actually in the nature of pre-hearing discovery.

After a careful examination of the statute, we find that the Commission can issue an enforceable subpoena duces tecum only in the third stage, the hearing stage of the complaint procedure. The plain language of the statute renders this conclusion inescapable.

The subpoena power of the Commission is specifically mentioned only in § 296.030(8). This section provides that the Commission can require the production of documents "... relating to any matter under investigation or in question before the commission." § 296.030(8). However, the Commission can require such production only "*in connection*" with the holding of hearings, and the taking of testimony from subpoenaed witnesses. § 296.030(8). Since the power of the Commission to subpoena witnesses is granted in conjunction with its power to hold hearings, it follows that the subpoenaing of witnesses is authorized only in the context of a hearing before a Commission panel or a hearing examiner.[10] Thus, § 296.030(8) authorizes the Commission to issue a subpoena duces tecum only in the hearing stage.

We find further support for this position in § 296.040(8), which provides that, "when the case is heard by a hearing examiner, the examiner shall have all powers provided in subdivision (8) of section 296.030, for the purpose of the hearing." This provision clearly indicates that the subpoena power over documents and witnesses is limited to the hearing stage of the complaint procedure under § 296.040(3).

In addition we note that the Commission is seeking enforcement of the subpoena in this case pursuant to the provisions of § 536.077. The regulations of the Commission provide that subpoenas are to be enforced under chapter 536. 4 CSR 180–2.-020(4). This regulation is based upon § 296.040(6). Section 296.040(6) provides that *hearings* before the Commission panel or the hearing examiner shall be conducted in accordance with chapter 536, RSMo. The exclusion from this section of any reference to the investigation stages prior to the issuance of a notice of hearing clearly indicates a legislative intent that the subpoena enforcement provisions of chapter 536 apply only in the context of a hearing. In essence, the express mention of the hearing stage implies the exclusion of all prior stages of investigation. *Harrison v. MFA Mut. Ins. Co., supra.*

Finally we find that under the provisions of chapter 536, the Commission cannot issue an enforceable subpoena until after the notice of hearing is issued under § 296.040(3). As noted earlier, the Commission can en-

---

**10.** In the context of a hearing a witness may be subpoenaed to testify at the hearing itself, or at a pre-hearing deposition. The Commission acknowledges that depositions may be taken only in conformance with chapter 536. 4 C.S.R. 180–2.020(1). Under § 536.073 depositions are authorized only in a "contested case." As our discussion, *infra*, will show, a "contested case" arises only after a notice of hearing is issued under § 296.040(3). Thus, a witness can only be subpoenaed after notice of a hearing is issued during the hearing stage of the complaint procedure.

force its subpoena only through a circuit court pursuant to § 536.077. The general grant of the subpoena power in § 296.-030(8), and the specific provisions governing the enforcement of that power in § 536.077 must be read in pari materia. *State ex rel. Fort Zumwalt School District v. Dickherber*, 576 S.W.2d 532, 536 (Mo. banc 1979). The two provisions must be harmonized if possible, but to the extent of any repugnancy between them, the specific provisions of § 536.077 must prevail over the general provisions of § 296.030(8). *Id.* at 537.

Section 536.077 provides that a subpoena duces tecum may be issued and enforced by a circuit court only in a " . . . contested case before an agency created by the constitution or state statute . . . ." A " 'contested case' means a proceeding before an agency in which legal rights, duties or privileges of specific parties are required by law to be determined after hearing." § 536.010(2). When the legislature used the term "hearing" in the context of "contested case", it meant adversary proceeding. *City of Richmond Heights v. Bd. of Equalization*, 586 S.W.2d 338, 343 (Mo. banc 1979). The concept of "contested case" entails a statutory requirement that the issue in question be contested in a hearing before an administrative agency of which a record is made. *Morrell v. Harris*, 418 S.W.2d 20, 22 (Mo.1967). It follows that under § 536.077, the circuit court cannot enforce a subpoena until there is an adversary proceeding pending before administrative agency in which the rights, duties or privileges of the parties are at stake; and in which a record is made.

Under § 296.040 a contested case does not arise until a notice of hearing is issued by the Commission. Prior to the notice of hearing, during the conciliation stage or the pre-complaint stage, the party charged with the discriminatory act (the respondent) is under no statutory compulsion to answer any charges, or respond to the conciliation attempts instituted by the Commission. § 296.040(2). The party is required to answer the charges only after a notice of hearing is issued. § 296.040(3). After the notice of hearing the party makes its de-

fense in a hearing before a Commission panel or hearing examiner. § 296.040(3). The hearing is an evidentiary hearing in which the testimony of witnesses is under oath. § 296.040(5). After the hearing the Commission panel or hearing examiner is required to make findings of fact and conclusions of law. §§ 296.040(7) and (8). If the party is found guilty of the act complained of the Commission is empowered to issue a cease and desist order, and direct other affirmative relief to rectify the wrong committed by the party. § 296.-040(7). It is patently clear that an adversary proceeding upon the record in which the rights, duties or privileges of the parties are determined arises only upon the issuance of a notice of hearing. Thus, the notice of hearing issued under § 296.040(3) is the point at which a "contested case" arises. It follows that the general grant of the subpoena power "in connection" with the holding of hearings is perfectly consistent with the fact that a subpoena cannot be enforced before a "contested case" arises under § 536.077. The hearing stage begins and a contested case arise simultaneously i.e., when the notice of hearing is issued. At that point the Commission is authorized to issue a subpoena duces tecum.

The Commission contends that § 296.030(8) is a general grant of subpoena power which may be exercised in the course of any investigation conducted by the Commission. The Commission has passed a regulation reflecting this position. Title 4 CSR 180–2.010(9) provides that the Commission may issue subpoenas during its investigation of a discrimination complaint prior to a finding of probable cause and any attempts of conciliation under § 296.040(2). We do not agree. As indicated by our previous discussion, the Commission's position flies in the face of the plain meaning of the language used in § 296.030(8). Furthermore, if we adopted the Commission's position, we would be permitting the enforcement of an administrative subpoena under § 536.077 in the absence of a "contested case." We refuse to construe § 296.030(8) such that it is in direct conflict with § 536.077. Conse-

quently, we hold that the Commission cannot issue a subpoena duces tecum until after a valid discrimination complaint is filed and a notice of hearing is issued upon that complaint. To the extent that 4 CSR 180–2.010(9) is inconsistent with this holding it is invalid.

The Commission finally contends that a general subpoena power is necessary to effectuate the broad remedial purpose of the statute. The Commission has presented no argument or evidence in support of this contention. Even if there were such evidence, we are powerless to grant the Commission authority to issue subpoenas where the legislature has so clearly indicated its intent that the Commission not have such authority. If a general subpoena power is necessary, that change in the statute must come from the legislature, not the judiciary.

SMITH, P. J., and SATZ, J., concur.