**Anthony BARBER, Respondent,**

v.

**JACKSON COUNTY ETHICS COMMISSION, Appellant.**

**No. WD 51887.**

Missouri Court of Appeals, Western District.

Nov. 5, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 24, 1996.

Jack L. Campbell, Thomas A. Sheehan, Adam P. Sachs, Shughart Thomson & Kilroy, P.C., Kansas City, for appellant.

Cathy J. Dean, Dennis J. Dobbels, Stephen M. Gorny, Polsinelli, White, Vardeman & Shalton, Kansas City, for respondent.

Before EDWIN H. SMITH, P.J., and BRECKENRIDGE and ELLIS, JJ.

BRECKENRIDGE, Judge.

The Jackson County Ethics Commission issued a subpoena for the bank records of Anthony Barber during its investigation of allegations that an employee of Jackson County had violated conflict of interest provisions of the Jackson County Charter. Mr. Barber challenged the enforcement of the subpoena by filing a petition for a writ of prohibition, claiming that the Ethics Commission lacked authority to issue the subpoena. The Circuit Court of Jackson County found that the Ethics Commission's investigation was an improper attempt to exercise a judicial function and issued an order permanently prohibiting enforcement of the subpoena.

This court finds that the Ethics Commission has the power to conduct investigations into ethics violations and to issue subpoenas to aid its investigations. The judgment of the circuit court is reversed, and the cause is remanded to that court with directions to quash the writ of prohibition and dismiss the petition with prejudice.

The relevant facts of this case are undisputed. On November 3, 1970, the citizens of Jackson County voted to replace its existing form of government with one based on the principles of "home rule" and adopted the Jackson County Constitutional Home Rule Charter, pursuant to the provisions of article VI, § 18 of the Missouri Constitution.

In 1994, the charter was amended by the voters to create the Jackson County Ethics Commission. One function of the Commission is to receive complaints and conduct investigations of "conflicts of interest, financial interest disclosure, and lobbying registration and disclosure provisions of the charter, the code and ordinances, and the statutory and common law of the state of Missouri as it applies to county officers, employees, members of county boards or commissions, and persons dealing therewith as S.W.2d 'lobbyists'. . . ." Charter article XII, Section 6(1). To carry out its investigative duties, the Commission is given the power to "issue subpoenas for witnesses and for the production of books, papers, documents, or tangible things." Charter article XII, § 7(2). If the Commission finds probable cause that a violation has occurred, it is to "make recommendations of appropriate action to state or county officials, agencies, and appointing authorities." Charter article XII, § 6(4).

In July 1995, the Commission received two verified complaints alleging that the Jackson County Minority Contractor Compliance Officer, Lisa C. Hughes, had accepted an interest-free loan or transfer of money from Anthony Barber, a contractor who does business with Jackson County. The accusa-

tions, if true, would violate the Charter's conflict of interest provisions. To determine if it was probable that the allegations were true, the Commission initiated an investigation. A hearing was scheduled, and a subpoena duces tecum was issued to a United Missouri Bank employee, Jayleen Pfeffly. The subpoena sought Ms. Pfeffly's sworn testimony at the hearing and production of Mr. Barber's bank records pertaining to the allegations.

Mr. Barber filed a petition for preliminary and permanent writs of prohibition in the Circuit Court of Jackson County, alleging, *inter alia*, that the Ethics Commission did not have proper authority to enforce the subpoena. The circuit court entered a permanent writ of prohibition, holding that:

> the Commission's investigation and the Subpoena issued in aid of said investigation are an attempt by the Commission to exercise a judicial function. The investigation is judicial in nature for the reasons that it is designed to adjudicate the alleged actions of Ms. Hughes and provides for possible disciplinary and penal actions against Ms. Hughes.

> .     .     .     .     .

> Neither the Missouri Constitution nor the cited authority suggest that a chartered county has the constitutional authority to create an entity with the power to subpoena records and testimony for a *judicial purpose.*

> .     .     .     .     .

> [T]he Missouri Constitution does not provide the authority for Jackson County by way of the Charter to grant subpoena power to the Commission.

The Ethics Commission's sole point on appeal is that the permanent writ of prohibition should be quashed "because the Jackson County Charter authorizes the Ethics Commission to issue subpoenas and the Commission does not perform a judicial function when it exercises its investigative authority under the charter."

■  The circuit court misapplied the law when it found that the functions of the Ethics Commission were judicial in nature,

and, therefore, beyond the power of the Jackson County Charter. Although article V of the Missouri Constitution vests the judicial power of the state exclusively in the supreme court, the courts of appeals and the circuit courts, this limitation of power does not prevent other governmental entities from performing "quasi-judicial" functions. *See Lederer v. State, Dept. of Social Serv.,* 825 S.W.2d 858, 862–63 (Mo.App.1992). An administrative agency does not violate the constitutional requirement of separation of powers by holding hearings and rendering administrative decisions to discharge the administrative function of the agency because such actions are quasi-judicial. *Id.* In exercising its administrative agency power, an agency can ascertain the facts and apply the existing law to the facts. *Id.* at 862. So long as the agency does not attempt to pronounce a judgment and carry it into effect, it is not performing a judicial act. *Id.*

■  Here, the Ethics Commission, an administrative agency of Jackson County, was not attempting to pronounce a judgment or carry a judgment into effect. Charter article XII, §§ 6 and 7 empower the Ethics Commission to investigate allegations of ethics violations by conducting hearings, meetings, and investigations; issuing subpoenas; administering oaths; taking testimony; requiring the production of documentary evidence; and requiring the submission of written verified reports and answers to question relevant to the scope of the inquiry. If, at the conclusion of an investigation, the Commission finds probable cause that a violation has occurred, it shall "make recommendations of appropriate action to state or county officials, agencies, and appointing authorities." Charter article XII, § 6.4. The Commission's findings of probable cause and making of recommendations, by their very nature, cannot be characterized as an attempt to enter a judgment which could be enforced.

■  Since the Commission was acting in a quasi-judicial capacity, and not attempting to exercise a judicial function, the inquiry turns to whether the subpoena for Mr. Barber's bank records was otherwise entitled to be enforced. A subpoena issued during an administrative investigation will generally be

enforced by the courts, if: "1) the inquiry is within the authority of the agency; 2) the demand is not too indefinite; 3) the information sought is reasonably relevant." *Angoff v. M & M Management Corp.*, 897 S.W.2d 649, 652 (Mo.App.1995) (quoting *Matter of Hein*, 584 S.W.2d 631, 632 (Mo.App.1979)). Mr. Barber does not claim that the demand was too indefinite or that the information was not relevant. He claims that the constitution and the statutes of Missouri do not give a charter county the authority to subpoena witnesses to appear at a hearing on allegations of ethic violations.

Mr. Barber's claim of lack of authority raises two issues: whether Jackson County has the power to establish a commission to investigate ethics violations, and, if so, whether the charter sufficiently grants this body authority to issue subpoenas to aid in its investigation.

▆▆▆ We first consider whether a charter county can establish an ethics commission. The constitutional grant of powers to charter counties is contained in article VI, § 18 of the Missouri Constitution. Section 18(c) expressly provides for "the vesting and exercise of legislative power pertaining to any and all services and functions of any municipality or political subdivision. . . ." Missouri Constitution article VI, § 18(c). *See also Chesterfield Fire Protection v. St. Louis County*, 645 S.W.2d 367, 371 (Mo. banc 1983). The term "function" within the context of Section 18(c) includes "all of the activity appropriate to the nature of political subdivisions or municipalities which combine to produce services, those specific acts performed by political subdivisions or municipalities for the benefit of the general public." *Chesterfield Fire Protection*, 645 S.W.2d at 371. A county charter enacted under article VI, § 18(b) of the constitution also carries with it an implied grant of such powers as are reasonably necessary to the exercise of the powers granted, so long as the exercise of such powers does not " 'invade the province of general legislation' involving public policy of the State as a whole." *Flower Valley Shopping Center, Inc. v. St. Louis County*, 528 S.W.2d 749, 754 (Mo. banc 1975) (citation omitted).

▆▆▆ One of the powers granted to charter counties by the constitution is the police power. *See K–Mart Corp. v. St. Louis County*, 672 S.W.2d 127, 132 (Mo.App.1984); *Meyer v. St. Louis County*, 602 S.W.2d 728, 736 (Mo.App.1980); *Caesar's Health Club v. St. Louis County*, 565 S.W.2d 783, 786 (Mo. App.1978). "Police power is the exercise of the sovereign right of a government to promote order, safety, health, morals, and the general welfare of society, within constitutional limits." *Marshall v. Kansas City*, 355 S.W.2d 877, 883 (Mo. banc 1962) (quoting 16 C.J.S. Constitutional Law § 174, p. 889). The test for determining the validity of a county's exercise of police power is whether it is reasonable. *Caesar's Health Club*, 565 S.W.2d at 786. It is reasonable, if "the object of the police measure is a proper one, . . . and the means adopted to accomplish that object are appropriate." *Id.* The burden of proving the unreasonableness of the act is on the challenging party:

> The exercise of police power is presumed to be constitutionally valid; the presumption of reasonableness is with the State. The exercise of police power will be upheld if any state of facts either known or which could be reasonably assumed affords support for it. The party challenging certain legislation has the burden on the question of its reasonableness.

*Id.* (citations omitted).

Charter article XII, § § 5 through 8, which establish the Ethics Commission, are fairly referable to the police power of Jackson County. These provisions, permitting investigation of alleged violations of the charter for conflicts of interest or influence peddling by present or former officials and employees, demonstrate on their face that they were enacted to protect and further the order, safety, health, morals and general welfare of the inhabitants of the county, and they accomplish their purpose in a reasonable way. Jackson County has a valid local interest in investigating alleged ethics violations, and the establishment of the local ethics commission in no way invades the province of general legislation involving the public policy of the state as a whole.

■ Sections 105.955 to 105.971, RSMo, authorize the establishment of a Missouri Ethics Commission to assist in the enforcement of Sections 105.450 to 105.498, RSMo, regulating conflict of interest and lobbying, and chapter 130, RSMo, governing campaign finance disclosure. Under § 105.955.14(4), RSMo Supp.1995, one of the functions of the Missouri Ethics Commission is to provide information and assist political subdivisions in carrying out the provisions of the aforementioned statutes. A charter county is a political subdivision of the state. *Casper v. Hetlage,* 359 S.W.2d 781, 784 (Mo.1962). Section 105.955.14(5), RSMo Supp.1995, also authorizes the Missouri Ethics Commission to "advise state and local government in the development of local government codes of ethics and methods of disclosing conflicts of interest as the commission may deem appropriate to promote high ethical standards among all elected and appointed officials or employees of the state or any political subdivision thereof and lobbyists...."

■ This statute amounts to a declaration that it is the public policy of the State that a local government, such as Jackson County, be able to adopt rules and procedures to promote the ethical conduct of its officials and employees. A charter county is *not required to exercise the powers and duties granted to it in precisely the same way as prescribed by the general law of the state. Hellman v. St. Louis County,* 302 S.W.2d 911, 916 (Mo.1957). Charter counties can adopt reasonable means and methods of carrying out their governmental functions so as to meet the "peculiar needs of such counties." *Id.* The process established by Charter article XII, § § 5 through 8 to promote ethical conduct is a reasonable means and methods of Jackson County's police power, and in no way invades the province of general legislation involving the public policy of the State as a whole.

■ Upon finding that Jackson County has the power to establish the Ethics Commission, the remaining issue is whether the Ethics Commission has the authority to issue subpoenas during the course of its investigations. Administrative agencies may exercise only that power which has been conferred upon them by statute, and agencies have no inherent authority to issue a subpoena. *Brooks v. Pool–Leffler,* 636 S.W.2d 113, 119 (Mo.App.1982). An agency has the power to issue a subpoena, however, if authorized by statute. *Id.* A number of administrative agencies possess subpoena power, including the Missouri Commission on Human Rights and the Missouri Department of Insurance. *Id.* at 120; *Angoff,* 897 S.W.2d at 656.

■ Just as a state statute may provide authority for a state administrative agency's exercise of power, so may a county charter provide authority for the officers, employees and agencies of charter counties. A charter is the county's fundamental, organic law. *State ex. rel. St. Louis County v. Campbell,* 498 S.W.2d 833, 836 (Mo.App. 1973). Charter provisions have the force and effect of legislative enactments, if consistent *with and subject to the constitution and statutes of this state. State ex rel. Childress v. Anderson,* 865 S.W.2d 384, 387 (Mo.App. 1993).

Article XII, § 7(2) of the Jackson County Charter expressly grants the Ethics Commission authority to issue subpoenas. The power to issue subpoenas would fall within the implied powers of § 18(b) of the Missouri Constitution because it is reasonably necessary to the exercise of the powers granted to Jackson County. Because the Commission is properly granted the authority to issue subpoenas, and the charter provisions are consistent with and subject to the constitution and statutes of this state, the trial court erred in entering the permanent writ of prohibition barring the Commission from exercising this power.

The order of the trial court is reversed and the cause is remanded to the trial court with directions that it quash the writ of prohibition and dismiss the petition with prejudice.

All concur.