STATE BOARD OF REGISTRATION FOR THE HEALING ARTS, Respondent,

v.

Paul M. VANDIVORT, Jr., Appellant.

No. WD 57655.

Missouri Court of Appeals, Western District.

May 30, 2000.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 1, 2000.

2. The facts do not indicate when wife's fraud action was filed, but indicates the divorce was finalized in 1988.

C. John Pleban, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., James Ertle, Asst. Atty. Gen., Jefferson City, for respondent.

PAUL M. SPINDEN, Judge.

Because Paul M. Vandivort, Jr., did not turn over medical records for one of his patients to the State Board of Registration for the Healing Arts in response to the board's subpoenas *duces tecum,* the board seeks to discipline his license authorizing him to practice as a physician. Vandivort appeals the circuit court's judgment affirming a summary determination by the Administrative Hearing Commission that the board had authority to discipline Vandivort's license. We reverse the circuit court's judgment. The board did not have a lawful basis for disciplining Vandivort's license.

The board issued its subpoenas *duces tecum* on May 29, 1997, and directed Vandivort to provide "any and all documents relating to any settlements, fees, or contracts related to Kim Ware Johnson" and "any and all medical and counseling records and charges and payments of patient, Kim Ware Johnson." In an affidavit, the board's investigator, Robert Burbridge, said that he endeavored to serve the subpoenas to Vandivort's attorney, C. John Pleban, after Pleban agreed to accept it on Vandivort's behalf. Burbridge said that, when he took the subpoenas to Pleban's office at the appointed time, Pleban's secretary told him that Pleban was in conference and could not accept the subpoenas, so, Burbridge said, he left the subpoenas

with the secretary. Pleban said in a counter-affidavit that he did not remember making arrangements with Burbridge to accept the subpoenas, so he denied Burbridge's averment. Vandivort said in an affidavit that he had not authorized Pleban or anyone to receive a subpoena on his behalf. Vandivort refused to turn over the documents on the ground that doing so would subject him to Johnson's suing him for breaching the patient-physician privilege.[1]

The commission granted summary determination for the board. It made these findings of fact:

1. Vandivort is a psychiatrist. He is and was at all relevant times licensed by the [b]oard as a physician, License No. MDR8670.

2. The [b]oard received a report containing serious allegations regarding Vandivort's practice. The [b]oard decided to investigate. Vandivort's attorney represented him in the course of the investigation.

3. On May 29, 1997, the [b]oard issued two subpoenas duces tecum. The subpoenas required Vandivort to "present on demand" certain records to the [b]oard or its investigator, Richard Burbridge.

4. On June 16, 1997, Vandivort's attorney and Burbridge agreed to service of the subpoenas on the attorney at the attorney's office at 2:00 p.m. on June 17, 1997.

5. On June 17, 1997, at 2:00 p.m., Burbridge was at the attorney's office. The attorney was unavailable. Burbridge left the subpoenas at the attorney's office with the attorney's secretary.

6. Before delivering any patient documents to the [b]oard, Vandivort wanted certain assurances as to any lawsuit arising from such disclosure, including that:

 a. the [b]oard would defend him, and

 b. the State Legal Defense Fund would pay any judgment against him, arising from such suit.

7. Vandivort did not deliver the documents.

The commission noted in its decision that Vandivort did not seek to have the subpoenas quashed:

If Vandivort had concerns about the terms or consequences of compliance with the subpoenas, a device was available to Vandivort for relief from them—an injunction to quash the subpoenas. *Barber v. Jackson County Ethics Comm'n*, 935 S.W.2d 62 (Mo.App. W.D. 1996).[2] That remedy was available to him during the four months between the delivery of the subpoenas and the filing of the [b]oard's complaint. During that time, nothing prevented Vandivort from either seeking that remedy or delivering the records. Vandivort cites no authority allowing him to set conditions on his compliance with the [b]oard's subpoena.

▪ The commission erroneously put the burden for affirmative action on the wrong party. The General Assembly has mandated that the board—not the licensee—has a duty to act if it wants to enforce its subpoenas. While § 334.127.1, RSMo 1994, gives the board the authority to issue subpoenas,[3] the General Assembly

---

1. Section 334.100.7, RSMo 1994, seems to undercut Vandivort's position significantly. The statute says that "any record relating to any patient of the licensee ... shall be discoverable by the board and admissible into evidence, regardless of any statutory or common law privilege which such licensee ... or patient might otherwise invoke. In addition, no such licensee ... may withhold records or testimony bearing upon a licensee's ... fitness to practice on the ground of privilege between such licensee ... and a patient."

2. We find nothing in Barber that addresses injunctions to quash subpoenas.

3. The board possesses no inherent power to issue subpoenas and may do so only as authorized by statute. *See Brooks v. Pool–Leffler*, 636 S.W.2d 113, 119 (Mo.App.1982) (superseded in part by statute as stated in *Gerlach v.*

made clear in § 334.127.2, RSMo 1994, that it wanted judicial review of the board's subpoenas if the subpoenas were to be enforced. Enforcement of subpoenas, therefore, must come through the courts, because the General Assembly did not authorize the board to enforce them. *See Brooks v. Pool–Leffler*, 636 S.W.2d 113, 119 (Mo.App.1982) (superseded in part by statute as stated in *Gerlach v. Missouri Commission on Human Rights*, 980 S.W.2d 589 (Mo.App.1998)).

Section 334.127.2 says:

The board may enforce its subpoenas, including subpoena duces tecum, by applying to a circuit court of Cole County, the county of the investigation, hearing or proceeding, or any county where the person resides or may be found, for an order upon any person who shall fail to obey a subpoena to show cause why such subpoena should not be enforced, which such order and a copy of the application therefore shall be served upon the person in the same manner as a summons in a civil action, and if the circuit court shall, after a hearing, determine that the subpoena should be sustained and enforced, such court shall proceed to enforce the subpoena in the same manner as though the subpoena had been issued in a civil case in the circuit court.

Rather than obligating Vandivort to seek the circuit court's order to quash the board's subpoenas, § 334.127.2 obligated the board to seek the circuit court's order to enforce the subpoenas through a show cause order if the board wanted the subpoenas enforced.

Vandivort argued to the commission that the board was obligated to seek a remedy under § 334.127.2 before disciplining his license for not complying with the statute. The commission responded, "The [b]oard seeks only our decision that there is cause to discipline Vandivort's license under [section] 334.100.2(4)(m). Nothing in sections 334.127 or 334.100.2(4)(m) sets forth any condition precedent for this action." We disagree.

Apparently believing that subpoenas are subject to misuse, the General Assembly insisted on judicial review for enforcement of the board's subpoenas.[4] Not all documents in the possession of a license holder are subject to discovery. To be subject to subpoena, the documents sought must contain evidence that is material and relevant to the issues in dispute.[5] Section 334.127.1, RSMo 1994, authorizes the board's president or secretary to issue the board's subpoenas. Typically, these individuals will not be trained in the law and will be persons who do not necessarily understand the distinctions which should be made concerning which documents are properly subject to subpoena. Hence, the General Assembly insisted on judicial review of these persons' subpoenas for them to be deemed enforceable.

Threatening to discipline a license—and the license holder's ability to practice—for not complying with a subpoena is clearly a means of enforcement. To permit the board to discipline a license because its holder did not obey a subpoena which the board has not submitted to judicial review undercuts the process mandated by the

*Mo. Comm'n on Human Rights*, 980 S.W.2d 589 (Mo.App.1998)). "This rule is merely a specific application of the general rule that an administrative agency has no more authority than that granted to it by statute. *State Bd. of Reg. For Healing Arts v. Masters*, 512 S.W.2d 150, 161 (Mo.App.1974)." *Brooks*, 636 S.W.2d at 119.

4. As the Brooks court noted, "When the power of the circuit court is invoked to enforce an administrative subpoena, the court must guard against the abusive use of its pro-

cess.... Enforcement of an administrative subpoena, which the agency in question has no authority to issue, is clearly an abuse of the court's process." 636 S.W.2d at 119.

5. Section 334.100.7 restricts its scope to "any record relating to any patient of the licensee[.]" Although we do not endeavor to resolve the issue in this case, we are doubtful that the General Assembly wanted to command discovery of all documents related in any way to a patient without regard for how remotely related.

General Assembly to assure that the board has issued a proper subpoena. Hence, we conclude that the General Assembly intended, when it authorized in § 334.100.2(4)(m) disciplinary action for a license holder's "[f]ailure to comply with any ... subpoena duces tecum from the board," to restrict discipline to cases in which a license holder has not heeded a subpoena subjected to judicial review.

 Relying on the General Assembly's use of "may" in § 334.127.2, the board argues that nothing in § 334.127 requires it to seek the circuit court's enforcement of a subpoena before it files a complaint against the licensee. The judiciary is obligated to effectuate the legislature's intent as expressed in its statutes. *Spradlin v. City of Fulton,* 982 S.W.2d 255, 258 (Mo. banc 1998). The General Assembly's intent in this statute was to say that, if the board sought to enforce its subpoena (which it is doing in this case), it may do so only by engaging the circuit court's intervention. The statute uses the term "may" because the board is not obligated to enforce its subpoena. It may opt not to seek enforcement through the circuit courts, but it cannot use the disciplinary process to co-opt the General Assembly's mandate for judicial review before the board's subpoenas are enforced.

The board did not subject its subpoenas to judicial review in this case. The commission erred, therefore, in authorizing the board's disciplining of Vandivort's license for not obeying its subpoenas. We, therefore, reverse the circuit court's judgment to affirm the commission. The board had no lawful basis for asserting disciplinary action against Vandivort's license to practice as a physician.

JOSEPH M. ELLIS, Presiding Judge, and THOMAS H. NEWTON, Judge, concur.

