**CAESAR'S HEALTH CLUB et al.,**
**Plaintiffs-Appellants,**

v.

**ST. LOUIS COUNTY, Missouri,**
**Defendant-Respondent.**

No. 38558.

Missouri Court of Appeals,
St. Louis District,
Division Two.

April 11, 1978.

Motion for Rehearing and/or Transfer
Denied May 9, 1978.

Application to Transfer Denied
June 15, 1978.

Donald L. Wolff, Clayton, for plaintiffs-appellants.

Thomas W. Wehrle, County Counselor, George Lang, II, Asst. County Counselor, Clayton, for defendant-respondent.

REINHARD, Judge.

Respondent, the County of St. Louis, enacted an ordinance prohibiting prostitution. Appellants, twelve corporations or proprietorships, each a so-called "massage parlor" operating in St. Louis County, filed a petition to enjoin enforcement of the ordinance and to have it declared unconstitutional. The Circuit Court of St. Louis County declared it "to be constitutional; lawful and valid", denied a permanent injunction, but stayed its enforcement pending the outcome of this appeal. The ordinance, No. 7546, which was to become effective on August 20, 1975, provides:

"SECTION 2. Title VII, Chapter 713, SLCRO 1964, as amended, the Vice and Morality Code, is hereby amended by enacting and adding thereto three new sections, to be numbered 713.030, 713.040 and 713.080, relating to the regulation of prostitution, which new sections shall read as follows:

713.030 *Definitions* 1. The term "person" as used in this Chapter shall mean any natural person, firm, partnership, co-partnership, association, corporation or organization of any kind.

2. A person commits "prostitution" if he or she engages or offers or agrees to engage in sexual conduct in return for something of value to be received by the person or a third person.

3. "Sexual Conduct" occurs when there is:

(a) "Sexual Intercourse" which occurs when there is any penetration of the female sex organ by the male sex organ;

(b) "Deviate Sexual Intercourse" which means any sexual act involving the genitals of one person and the mouth, tongue or anus of another person;

(c) "Sexual contact" which means any touching, manual or otherwise, of the anus or genitals of one person by another.

4. "Something of Value" means any money or property, or any token, object or article exchangeable for money or property.

5. "Promoting prostitution" occurs when a person knowingly promotes, solicits, compels, or encourages a person to engage in prostitution or patronize prostitution.

6. "Profiting from Prostitution" occurs when a person acting other than as a prostitute receiving compensation for personally rendered prostitution services, knowingly accepts or receives money or other property pursuant to an agreement or understanding with any person whereby he or she participates or is to participate in the proceeds of prostitution activity.

713.040 *Prostitution, Promoting Prostitution, Profiting from Prostitution— Prohibited.*—A person shall not engage in prostitution, promoting prostitution, or profiting from prostitution.

713.080 *Penalties*—Any person violating any of the provisions of this Chapter shall upon conviction be punished by a fine not exceeding One Thousand Dollars ($1,000.00) or by imprisonment in the County Jail for not exceeding one (1) year, or by both such fine and imprisonment."

In their petition, appellants admit they "engage in the practice of giving massages at the request of the client, which do result in consensual touching of a person's anus or genitals", and which conduct specifically would be prohibited under § 3(c) of the ordinance. Massage activities involving sexual touching would be prohibited by the ordinance, and violation of the ordinance could result in civil prosecution of appellants and their employees. Because this case requires application of established constitutional principles and involves no real

issue requiring construction of the United States and Missouri Constitutions, we have jurisdiction. Art. V, § 3, Mo.Const. 1945, as amended, 1970. *St. Louis County Transit Co. v. Division of Employment Security,* 456 S.W.2d 334 (Mo.1970); *Forbis v. Associated Wholesale Grocers, Inc.,* 513 S.W.2d 760 (Mo.App.1974).

■■■ Appellants argue the trial court erred in declaring the ordinance constitutional because respondent failed to meet its burden of demonstrating a compelling state interest as justification for the ordinance.[1] Appellants correctly cite *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), for the proposition that "[w]here certain 'fundamental rights' are involved, . . . [a] regulation limiting these rights may be justified only by a 'compelling state interest', . . . ." *Id.* at 155, 93 S.Ct. at 728. Before we invoke this rule, however, it must appear that the challenged statute or ordinance infringes some fundamental right; and while the right of privacy has been recognized as just such a fundamental right, we are not convinced in this case that appellant has asserted a protectable privacy interest. The "compelling state interest" test is therefore inapplicable here.

■■■ Rather, we must judge the validity of the challenged ordinance according to the standard applicable to the exercise of police power, and the test of the validity of an exercise of police power is reasonableness. *McDonnell Aircraft Corporation v. City of Berkeley,* 367 S.W.2d 498 (Mo.1963). In general, the test of reasonableness is met in any case in which the object of the police measure is a proper one, as we conclude here, and the means adopted to accomplish that object are appropriate. *See Lawton v. Steele,* 152 U.S. 133, 14 S.Ct. 499, 38 L.Ed. 385 (1894), as cited in *Goldblatt v. Hemp-*

*stead,* 369 U.S. 590, 594–95, 82 S.Ct. 987, 8 L.Ed.2d 130 (1962).

■■■ The exercise of police power is presumed to be constitutionally valid; the presumption of reasonableness is with the State. *Bibb v. Navajo Freight Lines,* 359 U.S. 520, 79 S.Ct. 962, 3 L.Ed.2d 1003 (1959); *Salsburg v. Maryland,* 346 U.S. 545, 74 S.Ct. 280, 98 L.Ed. 281 (1954). The exercise of police power will be upheld if any state of facts either known or which could be reasonably assumed affords support for it. *U. S. v. Carolene Products Co.,* 304 U.S. 144, 58 S.Ct. 778, 82 L.Ed. 1234 (1938). The party challenging certain legislation has the burden on the question of its reasonableness. *Goldblatt v. Hempstead, supra.*

■■■ The general law in Missouri was stated recently in *Flower Valley Shopping Center v. St. Louis County,* 528 S.W.2d 749, 753–54 (Mo. banc 1975), *citing Bellerive Inv. Co. v. Kansas City,* 321 Mo. 969, 981, 13 S.W.2d 628, 634 (1929):

"It has been definitely and clearly established and settled, by the decisions of this court and of the federal Supreme Court, that a statute or a municipal ordinance, which is fairly referable to the police power of the state or municipality, and which discloses upon its face, or which may be shown aliunde, to have been enacted for the protection, and in furtherance, of the peace, comfort, safety, health, morality, and general welfare of the inhabitants of the state or municipality, does not contravene or infringe the several sections of the state and federal Constitutions invoked by the appellants herein, and cannot be held invalid as wrongfully depriving the appellants of any right or privilege guaranteed by the Constitution, state or federal; the reason and basis underlying such decisions being

---

1. Appellants argue in their brief that the trial court ruled prematurely and thereby precluded presentation of evidence of a "compelling state interest". Because the compelling state interest test is here inapplicable, evidence of this nature was not required.

A reading of the record makes it clear the parties submitted the case to the court on the pleadings and memoranda.

that the personal and property rights of the individual are subservient and subordinate to the general welfare of society, and of the community at large, and that a statute or ordinance which is fairly referable to the police power has for its object the 'greatest good of the greatest number.' "

An ordinance prohibiting prostitution is clearly referable to the police power of local government. We believe the ordinance here in question discloses on its face a purpose to protect and further the health, morality and general welfare of the citizenry, and that it furthers its purpose in a reasonable way. We now consider appellants' specific constitutional arguments.

They assert that enforcement of the ordinance would infringe upon the constitutionally guaranteed right of privacy insofar as it would proscribe private sexual conduct between consenting adults. Clearly, no privacy interests of the individual corporations and proprietorships is being asserted here. Rather, it is the right of its employees and customers to engage in certain sexual activities which appellants seek to have protected. Relief is requested not on the basis of some unconstitutionally incurred loss or injury appellants themselves might suffer, but rather on the basis of perceived rights of third persons who are not party to this litigation. Assuming in this instance that appellants have vicarious standing [2] to assert the rights of its masseuses and customers, we nevertheless find no merit in appellants' claim.

■ The Supreme Court has recognized that a right of personal privacy, or a guarantee of certain areas or zones of privacy, does exist under the Constitution.

". . . [The] decisions make it clear that only personal rights that can be deemed 'fundamental' or 'implicit in the concept of ordered liberty,' . . . are included in this guarantee of personal privacy." *Roe v. Wade, supra,* 410 U.S., at 152, 93 S.Ct., at 726. "This privacy right encompasses and protects the personal intimacies of the home, the family, marriage, motherhood, procreation, and child rearing." *Paris Adult Theatre I v. Slaton,* 413 U.S. 49, 65–66, 93 S.Ct. 2628, 2639, 37 L.Ed.2d 446 (1973) (citations omitted). Appellants urge that implicit in the concept of ordered liberty is the fundamental privacy right of its employees and patrons to participate in sexual massage activities in the seclusion afforded by appellants' massage establishments. For support, they look principally to *Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) and *Stanley v. Georgia,* 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969). Reliance on these cases is unavailing, however. *Griswold* and *Stanley,* and other decisions cited by appellants,[3] in no way intimate that there exists an absolute and unqualified right of privacy, sexual or otherwise. The conclusion which can more readily be drawn from the cases is that the right to privacy is not without limit as to places and relationships. *United States v. McKean,* 338 A.2d 439 (D.C.App.1975).

It is to be noted that the challenged ordinance does not prohibit persons from engaging in acts of massage as such, but from engaging in acts of massage involving sexual touching, for hire. And whatever may be said of the potential right of consenting adults to engage in private sexual massage activities, that, strictly speaking, is not the issue before us. Rather, it is the

2. The problem of standing, as it has arisen principally in the federal courts, ordinarily requires consideration of two distinct questions: first, whether the litigant cam demonstrate "a sufficiently concrete interest" in the outcome of the litigation and to render the suit a "case or controversy"; and second, as a prudential matter, whether the litigant is a proper proponent of the particular legal rights on which he

bases his suit. *Singleton v. Wulff,* 428 U.S. 106, 96 S.Ct. 2868, 2873, 49 L.Ed.2d 826 (1976).

3. In particular, *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) and *Eisenstadt v. Baird,* 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972).

commercialization of such activities with which we are concerned, and it is this commercial aspect which we believe removes them from the sphere of a protectable right of privacy. *See Brown v. Haner,* 410 F.Supp. 399, 401 (W.D.Va.1976).

 Implicit in appellants' argument is the suggestion that their establishments constitute private places, analogous to the private home in *Stanley v. Georgia, supra,* or the marital bedroom in *Griswold v. Connecticut, supra.* In *Paris Adult Theatre I v. Slaton, supra,* however, the Supreme Court rejected arguments that a place of public accommodation, a theater, was protected by the cloak of privacy. We reach the same conclusion in respect to the essentially commercial establishments here. The activities proscribed by the ordinance are carried on in places "which cannot in contemplation of law reasonably be considered private". *United States v. McKean, supra* at 440. *See also Harris v. United States,* 315 A.2d 569 (D.C.App.1974). Such activities therefore are not entitled to protection by a constitutional right of privacy.

Appellants further contend the ordinance is unconstitutionally overbroad, and therefore void and unenforceable. The ordinance states that "[a] person commits 'prostitution' if he or she engages or offers or agrees to engage in sexual conduct in return for something of value . . . ." "Sexual conduct" is defined as " 'sexual contact' which means any touching, manual or otherwise, of the anus or genitals of one person by another." The ordinance contains no provision as to whom or what it applies and makes no specific reference to massage establishments. While admitting that the conduct on their premises falls within the proscriptions of the ordinance, appellants maintain that by defining "sexual conduct" as *any* touching of the anus or genitals of one person by another, the ordinance may be construed to proscribe the normal functions of obstetricians, gynecologists, urologists, proctologists, nurses and baby sitters, all of whom are compensated

for services which frequently require touching of the anal and/or genital areas.

 Assuming the ordinance might be applied in ways suggested by appellants, we do not believe they may be heard to challenge the ordinance on grounds of overbreadth. The general rule is that "[O]ne to whom application of a statute is constitutional will not be heard to attack the statute on the ground that impliedly it might also be taken as applying to other persons or other situations in which its application might be unconstitutional". *United States v. Raines,* 362 U.S. 17, 21, 80 S.Ct. 519, 522, 4 L.Ed.2d 524 (1960). Employment of the *overbreadth* doctrine was restricted by the United States Supreme Court in *Broadrick v. Oklahoma,* 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973); it is used "sparingly and only as a last resort". *Id.* at 613, 93 S.Ct. at 2916. Our Supreme Court, in *Chamberlin v. Missouri Elections Com'n.,* 540 S.W.2d 876, 881 (Mo. banc 1976), has recognized a narrowing of the doctrine. Thus in only limited situations will courts now permit a litigant to assert, by way of the overbreadth doctrine, argued rights of non-litigants to whom a statute might be applied. The one principal exception to the general rule obtains in the first amendment area, where a statute which arguably violates rights of free speech or expression of others may be challenged by one to whom it may be constitutionally applied. *Broadrick v. Oklahoma, supra,* 413 U.S. at 611, 93 S.Ct. 2908; *United States v. Brewer,* 363 F.Supp. 606, 609 (M.D.Pa.1973).

 This case presents no issues touching on the first amendment; the ordinance clearly poses no threat to the rights of free speech and expression of doctors, nurses, baby sitters, or others whose conduct might be said to fall within the literal scope of the ordinance. Indeed, it is upon a theory of privacy that appellants base their claim. Where, as here, certain protected conduct, and not speech, is encompassed by an otherwise valid proscriptive statute, the over-

breadth doctrine is rarely applicable. As stated in *Broadrick v. Oklahoma, supra,* 413 U.S. at 615, 93 S.Ct., at 2917:

> "[F]acial overbreadth adjudication is an exception to our traditional rules of practice and . . . its function, a limited one at the outset, attenuates as the otherwise unprotected behavior that it forbids the State to sanction moves from 'pure speech' toward conduct and that conduct—even if expressive—falls within the scope of otherwise valid criminal laws that reflect legitimate state interests in maintaining comprehensive controls over harmful, constitutionally unprotected conduct. . . .

> \* \* \* \* \* \*

> [W]here conduct and not merely speech is involved, . . . the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep."

It is our view that the alleged overbreadth of the ordinance is neither real nor substantial. Moreover, because possible invalid applications of the ordinance are highly speculative and not presently before this court, we believe the ordinance should stand "until an actual case corroborates and justifies [appellants] claim of anticipated harm and unconstitutional application". *Chamberlin v. Missouri Elections Com'n, supra.*

That such a case will ever arise seems inconceivable. We cannot bring ourselves to believe that the rights of doctors, nurses, etc., will be, or were even intended to be, affected by the ordinance. In judging the validity of the ordinance, we must be guided by "robust common sense". Common sense suggests that while the definitional terms of the ordinance may encompass certain activities as suggested by appellants, the ordinance cannot reasonably be construed to prohibit such activities. The ordinance should not be declared overbroad on the basis of frivolous and speculative invalid applications when a limiting construction can reasonably be placed on it.

The judgment of the trial court is hereby affirmed.

STEWART, P. J., and DOWD, J., concur.