**STATE of Missouri,**
**Plaintiff/Respondent,**

v.

**Bearce ELLIS, Defendant/Appellant.**

**No. 62226.**

Missouri Court of Appeals,
Eastern District,
Division Four.

May 18, 1993.

Arlene Zarembka, Clayton, for defendant/appellant.

Gary M. Gaertner, Jr., Asst. Cir. Atty., St. Louis, for plaintiff/respondent.

CRANE, Judge.

Defendant, Bearce Ellis, was found guilty by a jury of patronizing prostitution in violation of § 567.030 RSMo 1986. The trial court found defendant to be a persistent misdemeanor offender and sentenced him to 180 days in jail. The trial court suspended the execution of sentence after 90 days service, defendant to then be placed on two years unsupervised probation. Defendant appeals from the judgment of the trial court. He asserts the trial court erred in giving the verdict directing instruction because it was at variance with the information and not supported by the evidence. He also challenges certain evidentiary rulings and the constitutionality of the statute. We affirm.

The facts, viewed in the light most favorable to the verdict, reveal that on July 1, 1991, Detective Colvin was engaged in an undercover operation at Carondelet Park with Detective Larry Rose and Detective Sergeant Koehler, all St. Louis city police officers. They were investigating reports of lewd and indecent acts taking place between males in the park. Det. Colvin dropped off Det. Rose near the public bathroom, and he and Koehler drove separately around the park. Det. Colvin saw a blue and light colored van drive through the area three times. After he parked his car, the van pulled up on his passenger side. Defendant, the driver of the van, motioned for him to roll down his window. Defendant asked if he was a cop and he said no. Defendant then asked where he worked and he replied at Ralston Purina. Defendant asked his name and Det. Colvin said "Jamie." Defendant then asked if he was looking for some fun. Det. Colvin said, "I don't know, I guess." Defendant responded, "[I]f you want to go to my place, ... I'll play with your cock until you get off." Defendant also said, "[A]nd I might have a little something for you." Det. Colvin replied, "[O]kay, I'll go with you." Defendant told Det. Colvin to follow him. Det. Colvin signaled Det. Rose that he was leaving and he had a case going. Det. Colvin followed defendant to a house about a mile from the park. Defendant got out of his car, hurried to the house and began to unlock the door. He then turned to Det. Colvin who was sitting in his vehicle and motioned to him. Det. Colvin went into the house while the defendant held the door. Defendant followed Det. Colvin into the living area, touched the side of Det. Colvin's body with his hand, and pulled himself to within six inches of the officer. Defendant then said, "I can't wait to suck your cock." He continued, "I'll give you five dollars if you will let me do it." Det. Colvin placed defendant under arrest at that time.

Det. Colvin and Det. Rose were the sole witnesses for the state. Defendant did not testify or put on any evidence.

I.

For his first point defendant claims that the trial court erred in submitting, over his objection, Instruction No. 5, the verdict director for the crime of patronizing prostitution, because it was at variance with the amended information. The amended information charged a different method of committing the crime than was submitted in the instruction.

Section 567.030 RSMo 1986 states that "[a] person commits the crime of patronizing prostitution if he patronizes prostitution."

Section 567.010(3) RSMo 1986 defines patronizing prostitution in several ways, including:

(b) He gives or agrees to give something of value to another person on an understanding that in return therefor that person or a third person will engage in sexual conduct with him or with another; or

(c) He solicits or requests another person to engage in sexual conduct with him or with another, or to secure a third person to engage in sexual conduct with him or with another, in return for something of value.

"Sexual conduct" is defined in § 567.010(4) to include "deviate sexual intercourse." Section 567.010(4)(b).

The amended information charged defendant with patronizing prostitution as defined in § 567.010(3)(c), alleging that he:

solicited or requested Detective Harvey Colvin to engage in deviate sexual intercourse with defendant in return for money.

On the other hand, Instruction No. 5, the verdict director, submitted that the jury should find defendant guilty only if it found beyond a reasonable doubt:

First, that on July 1, 1991, in the City of St. Louis, State of Missouri, the defendant agreed to give money to Detective Harvey Colvin, and

Second, that defendant did so based on an understanding that Detective Harvey Colvin would engage in deviate sexual intercourse with defendant in return for money....

Those elements track the definition of patronizing prostitution found in § 567.010(3)(b).

Defendant first contends that the trial court erred in giving Instruction No. 5 because a MAI–CR applicable to the charge was available. MAI–CR3d 321.04 provides alternative verdict directing instructions which track each definition for patronizing prostitution. Alternative 3 is the verdict directing instruction that corresponds to § 567.010(3)(c), the particular subsection charged in the amended information. However, the court submitted alternative 1, the verdict directing instruction that corresponds to a charge under § 567.010(3)(b).

Rule 28.02 provides that whenever there is an MAI–CR instruction applicable under the law, that instruction shall be given or used to the exclusion of any other instruction. Rule 28.02(f) provides that giving an instruction in violation of Rule 28 "shall constitute error, its prejudicial effect to be judicially determined."

■ Defendant argues that the variance between the charge and the instruction was prejudicial to his defense. The primary purpose of an information is to provide notice to the accused so that the accused may prepare an adequate defense to the charges. *State v. Lee*, 841 S.W.2d 648, 650 (Mo. banc 1992). " '[W]hen a crime may be committed by any of several methods, ... the method or methods submitted in the verdict directing instruction must be among those alleged in the information.' " *Id.* (quoting *State v. Shepard*, 442 S.W.2d 58, 60 (Mo. banc 1969)).

■ If the verdict directing instruction submits a different method of committing the offense than the method charged in the information, there is a variance. However, a variance does not necessarily constitute reversible error. *Lee*, 841 S.W.2d at 649–650. To justify a reversal, the variance must be material and prejudicial to the rights of the accused. *Id.* (citing *State v. Crossman*, 464 S.W.2d 36, 42 (Mo.1971); Rules 23.11 and 29.12; and §§ 545.030 and 546.080 RSMo 1986).

A variance is material when it affects whether an accused received adequate notice from the information. *Lee*, 841 S.W.2d at 650. A variance is prejudicial when it affects the defendant's ability to adequately defend against the charges presented in the information and given to the jury in the instruction. *Id.*

In this case we find the variance was neither material nor prejudicial. "Crucial

to the resolution of the question is the evidence adduced." *Id.* at 651. In this case the evidence was that the defendant stated to the undercover officer, "[I]f you want to go to my place, ... I'll play with your cock until you get off, and I might have a little something for you." He told the officer to follow him. When defendant returned home, he motioned for the officer to come in. When he was inside defendant told the officer, "I can't wait to suck your cock.... I'll give you five dollars if you will let me do it."

The amended information charged that defendant solicited or requested the officer to engage in deviate sexual intercourse with defendant in return for money. The jury was instructed to return a verdict of guilty if it found defendant agreed to give the officer money based on an understanding that the officer would engage in deviate sexual intercourse with defendant in return for money. Both the information and the instruction describe the same transaction. Defendant's statement, "I'll give you five dollars if you will let me do it" is both a solicitation or request to engage in the conduct in exchange for money and an agreement to give money based on an understanding that the officer would engage in the conduct.

■ Defendant argues that he was prejudiced because had he known the case would be submitted on the theory of an agreement based "on an understanding," he "would have cross-examined Det. Colvin to show that there was no agreement or understanding that Det. Colvin would engage in oral sex in return for money." This argument is based on a misconstruction of the statute. The statute is directed to the unilateral activity of the patron. The existence of a crime does not depend upon the understanding or agreement of the person being approached or solicited for sexual acts. In this statute "understanding" means "an understood or acknowledged condition, limitation or provision." Webster's Third New International Dictionary 2490 (1976). The statute applies when the patron gives or agrees to give money upon the condition that certain sexu-

al acts will be conducted in return. Accordingly, defendant was not prejudiced by not cross-examining the undercover detective regarding the detective's understanding that he would engage in sexual conduct.

Since there was no prejudice, the trial court's error in failing to give the appropriate alternative under MAI–CR3d 321.04 is not reversible error. Point one is denied.

## II.

■ For his second point defendant asserts that Instruction No. 5, the verdict directing instruction, was not supported by the evidence because there was no showing "that there was an understanding between Detective Harvey Colvin and defendant that Detective Harvey Colvin would engage in deviate sexual intercourse with defendant in return for money." This argument is based on the same misconstruction of the statute argued under point one. The statute does not require proof of a mutual understanding or an agreement by the person being solicited or approached. It applies when the patron agrees to give money or property upon the condition that certain sexual acts will be conducted. Defendant's statement, "I can't wait to suck your cock.... I'll give you five dollars if you will let me do it," is evidence that defendant agreed to give money on the condition that the parties would engage in the sexual activity mentioned. *See City of St. Louis v. Long,* 395 S.W.2d 481, 482–83 (Mo.App. 1965). The undercover officer's testimony that the statement was made was sufficient to sustain a conviction. *State v. Ferguson,* 780 S.W.2d 112, 113 (Mo.App.1989). His credibility was for the jury to determine. *Id.*

The instruction was based on substantial evidence. Point two is denied.

## III.

For his third point defendant asserts the trial court erred in admitting testimony concerning the reason undercover detectives were in Carondelet Park. Defendant objects to the admission of the following two statements by Det. Colvin: "I was in

Carondelet Park at the direction of Detective Sergeant Koehler to investigate lewd and indecent conduct that was supposedly taking place," and "Sergeant Koehler had received information at the office over a period of time that there were lewd and indecent acts taking place in the park. As a result—Between males."

During trial defendant objected[1] on the grounds that the testimony elicited or sought to be elicited regarding the reason for the undercover operation was "irrelevant," "speculative," and "hearsay" and there was "lack of foundation." In the argument portion of his brief, however, defendant argues only that this testimony was improper because it constituted evidence of other crimes. This specific ground was not raised at trial. Although it is generally encompassed in the concept of relevancy, the bare assertion of relevancy as an objection is insufficient to preserve for review error on the ground of improper evidence of other crimes. *State v. Herrick*, 814 S.W.2d 660, 663 (Mo.App.1991). We accordingly review for plain error. Rule 30.20.

A trial court has broad discretion to exclude or admit evidence adduced by the parties at trial. *State v. Henderson*, 826 S.W.2d 371, 374 (Mo.App.1992). We do not interfere with a trial court's ruling on the admission or exclusion of evidence absent a clear abuse of that trial court's discretion. *Id.*

Defendant argues that the testimony should have been excluded because it constituted evidence of other crimes. Evidence of separate, distinct and unrelated crimes is generally inadmissible unless the evidence has a legitimate tendency to establish a defendant's guilt of the crime charged. *State v. Kenley*, 693 S.W.2d 79, 81 (Mo. banc 1985).

However, there are many exceptions to this principle. If admissible evidence is inseparable from evidence which implicates defendant in another crime, the evidence is usually admissible in its entirety. The determination of whether evidence is inseparable is left to the sound discretion of the trial court. *State v. Hampton*, 648 S.W.2d 162, 166 (Mo.App.1983). Further, the state may paint a complete picture of the crime charged and need not sift and separate the evidence. *State v. Whitman*, 788 S.W.2d 328, 337 (Mo.App.1990). In *State v. Ferguson*, 780 S.W.2d 112, 114 (Mo.App.1989) we held that testimony about the general operation of an undercover investigation provided background necessary to understand the events leading to the charges against the defendant.

Whether evidence of other crimes is admissible turns on whether the evidence is relevant and that determination is made by the trial court which is in the best position to evaluate whether the potential prejudice outweighs the relevance. *Kenley*, 693 S.W.2d at 81. A trial court's admission of irrelevant and immaterial evidence, even of other crimes, will not be reversed on appeal absent a showing of prejudice. *Hampton*, 648 S.W.2d at 166.

In a prosecution for carrying a concealed weapon, we have held that testimony by investigating police officers that they met the informant while engaged in a robbery investigation was not prejudicial. The robbery investigation was mentioned solely in the context of what the police were doing when they met the informant who led them to the defendant. There was no evidence connecting the defendant to a robbery. *Henderson*, 826 S.W.2d at 374–376.

In this case the detective testified that he was in the park to investigate reports that lewd and indecent acts were taking place in the park between males. There was no evidence before the jury that defendant had engaged in these acts or that such an allegation had been reported to the police. There was no evidence of any such act observed by the police detectives. No details were offered of any such act. The testimony was offered to explain

---

1. Defendant also asserts error in the trial court's denial of his motion in limine. A trial court's ruling on a motion in limine is interlocutory and is thus not appealable. *State v. Henderson*, 826 S.W.2d 371, 374 (Mo.App.1992). We review the objections made at trial. *Id.*

why the detectives were in the park and their pattern of behavior in the park. Under these circumstances the trial court's admission of the detective's testimony regarding why he was in the park was not prejudicial.

There was no error, plain or otherwise. Point three is denied.

### IV.

For his fourth point defendant asserts that the trial court erred in overruling his motion to dismiss on the grounds that § 567.030 is vague in violation of the United States and Missouri Constitutions. Specifically defendant objects to the definition of "deviate sexual intercourse." This term is defined in § 567.010(4)(b) RSMo 1986 as "any sexual act involving the genitals of one person and the mouth, hand, tongue or anus of another person." Defendant claims the phrase "sexual act involving" is vague because none of these words are defined.

Because defendant raises a question concerning the validity of a statute of this state, we must first determine whether this is within the exclusive appellate jurisdiction of the Supreme Court. Mo. Const. art. V, § 3. We are not bound by defendant's statement that jurisdiction lies with this court. *State v. Charity*, 637 S.W.2d 319, 321 (Mo.App.1982).

■ Article V, § 3 of the Missouri Constitution states that the Supreme Court has exclusive appellate jurisdiction of all cases involving the validity of a statute of this state. The mere assertion that a statute is unconstitutional, however, does not deprive the court of appeals of jurisdiction. This court has jurisdiction to determine if defendant has standing to raise a constitutional argument. *State v. Worthington*, 582 S.W.2d 286, 288 (Mo.App.1979). Further the constitutional issue must be real and substantial, and not merely colorable. *Charity*, 637 S.W.2d at 321; *State v. Prowell*, 834 S.W.2d 852, 854 (Mo.App.1992).

■ We first address the issue of standing. Generally, one is required to claim a statute is unconstitutional as to that person's own conduct. "[O]ne to whom application of a statute is constitutional will not be heard to attack the statute on the ground that impliedly it might also be taken as applying to other persons or other situations in which its application might be unconstitutional." *United States v. Raines*, 362 U.S. 17, 21, 80 S.Ct. 519, 522, 4 L.Ed.2d 524 (1960).

■ In *Caesar's Health Club v. St. Louis County*, 565 S.W.2d 783 (Mo.App. 1978), a St. Louis County ordinance prohibiting prostitution was attacked as overbroad. The ordinance defined "sexual conduct" as occurring when there is " '[s]exual contact' which means any touching, manual or otherwise, of the anus or genitals of one person by another." *Id.* at 785. The plaintiffs, massage parlor owners, argued that the ordinance could be applied to wholly legitimate activity by health care providers or baby sitters. We held, citing *Raines*, that plaintiffs, whose conduct did fall within the proscriptions of the ordinance, could not challenge the ordinance on the ground that it could be construed to apply to others in a way that might be unconstitutional.[2] 565 S.W.2d at 788.

Likewise, our Western District, citing *Raines*, has held that a defendant charged with violating a sodomy statute did not have standing to assert that the statute was unconstitutional because it invaded the privacy interests of other persons. *Worthington*, 582 S.W.2d at 289–90. The court held that a defendant may not espouse the cause of differently situated persons as a defense in a prosecution where the statute clearly applies to him. *Id.*

With the exception of one sentence in his argument, defendant fails to provide argument or authority showing how the statute is unconstitutionally vague as applied to his conduct. Instead he relates the alleged

---

**2.** We further held the overbreadth argument was inapplicable where no free speech issues were raised. "Overbroadness is a concept appropriate in first amendment cases and may be used to invalidate a statute which, while legitimately punishing unprotected conduct, is so broadly worded that it might be read as punishing protected speech, thereby leaving people in doubt as to the limits of free expression." *State v. Madsen*, 772 S.W.2d 656, 659 (Mo. banc 1989).

vagueness to other persons such as medical care providers, people on dates, and actors on stage, or to conduct other than that for which he was convicted.

The sole case defendant relies on in support of his contention that this statute's language is unconstitutionally vague is a federal district court memorandum opinion. *Guinther v. Wilkinson*, 679 F.Supp. 1066 (D.Utah 1988). That case held a Utah statute using the phrase "apparent or actual sexual stimulation or gratification" to define "sexual activity" was vague because many of the ordinary acts associated with theater or dance performances could be construed as falling within the proscription of the statute. *Id.* at 1070. However, in that case, unlike the present case, not only was the statutory language different, but also the plaintiffs had standing because they were performing artists, dancers, actors, businesses and a prospective spectator. *Id.* at 1068. In this case, defendant has no standing to assert constitutional invalidity on the ground that the statute may be unconstitutional as applied to others.

The sole argument defendant makes relating to his own conduct is the rhetorical question, "Is sucking another's genitals always a 'sexual act' whether or not it is skin-to-skin, through clothing, or through barrier protectors?" Defendant does not develop this argument with authority or rationale. We find the constitutional attack on the validity of this statute merely colorable and not substantial. Accordingly, we have jurisdiction.

■ We examine constitutional claims in light of the strong presumption in favor of constitutionality. If a statute is susceptible of any reasonable and practical construction which will support it, it will be held valid, and the courts must endeavor by every rule of construction to give it effect. *State v. Duggar*, 806 S.W.2d 407, 408 (Mo. banc 1991).

■ A valid statute must provide a person of ordinary intelligence a reasonable opportunity to learn what is prohibited. *State v. Mahurin*, 799 S.W.2d 840, 842 (Mo. banc 1990). The vagueness doctrine is

directed at statutes that specify the criminal conduct on which charges are based, and requires criminal statutes to be sufficiently definite and clear so that potential violators know to what standard of behavior they must adhere. *State v. Madsen*, 772 S.W.2d 656, 659 (Mo. banc 1989).

When determining whether terms are unconstitutionally vague, "[n]either absolute certainty nor impossible standards of specificity are required...." *Duggar*, 806 S.W.2d at 408.

> The root of the vagueness doctrine is a rough idea of fairness. It is not a principle designed to convert into a constitutional dilemma the practical difficulties in drawing criminal statutes both general enough to take into account a variety of human conduct and sufficiently specific to provide fair warning that certain kinds of conduct are prohibited.

*Colten v. Kentucky*, 407 U.S. 104, 110, 92 S.Ct. 1953, 1957, 32 L.Ed.2d 584 (1972). " 'If the terms or words used in the statute are of common usage and are understandable by persons of ordinary intelligence, they satisfy the constitutional requirements as to definiteness and certainty.' " *Mahurin*, 799 S.W.2d at 842 (quoting *State v. Brown*, 660 S.W.2d 694, 697 (Mo. banc 1983)).

■ This statute has withstood other challenges based on vagueness. In *J.B.K., Inc. v. Caron*, 600 F.2d 710 (8th Cir.1979) the Eighth Circuit Court of Appeals reviewed Chapter 567 and specifically noted that "sexual conduct" was defined. *Id.* at 710. The court held that the statute was not unconstitutionally vague. The court found "that the statute is precisely worded, that its terms are sufficiently defined and that it gives 'fair notice of the offending conduct.' " *Id.* at 712 (quoting *Papachristou v. City of Jacksonville*, 405 U.S. 156, 162, 92 S.Ct. 839, 843, 31 L.Ed.2d 110 (1972)). In *Charity*, 637 S.W.2d at 321, our Southern District relied on *J.B.K., Inc.* and *Caesar's Health Club* to summarily reject a claim that the conduct prohibited in Chapter 567 was so broadly defined as to not adequately state what conduct is prohibited.

As applied to this case, the phrase "sexual act involving" read in the context of the sentence in which it appears would clearly and uniformly be recognized by a person of ordinary intelligence to include sucking the genitals of another. The statute is sufficiently specific to provide fair warning that sucking the genitals of another person is within the conduct that is prohibited. The statute is not required to meet the impossible standard of specificity suggested by defendant. To the extent he has standing, defendant's claim that the statute is unconstitutionally vague is without legal foundation. Point four is denied.

The judgment of the trial court is affirmed.

CARL R. GAERTNER, P.J., and CRAHAN, J., concur.