In the Missouri Court of Appeals
 Eastern District
 DIVISION TWO

STATE OF MISSOURI, ) ED108596
 )
 Respondent, ) Appeal from the Circuit Court
 ) of City of St. Louis
v. ) 1722-CR04593-01
 )
VIRON GANAWAY, ) Honorable Timothy J. Boyer
 )
 Appellant. ) FILED: MAY 25, 2021

 Introduction

 Viron Ganaway (“Ganaway”) appeals from the judgment of convictions and sentences

imposed by the trial court after a jury found him guilty of one count of first-degree robbery, one

count of resisting a lawful stop, and two counts of armed criminal action. On appeal, Ganaway

argues the trial court clearly erred in admitting certain evidence at trial, and in entering a

conviction for resisting a lawful stop because there was a variance between the charge and the

jury instructions. We affirm.

 Background

 The State charged Ganaway with one count of the class A felony of robbery in the first

degree (Count I), one count of the class D felony of assault in the second degree (Count III), one
count of the class D felony of tampering with a motor vehicle (Count IV),1 one count of the class

E felony of resisting/interfering with arrest for a felony (Count V) and two counts of armed

criminal action (“ACA”) (Counts II and VI). As relevant to the issues on appeal, the indictment

alleged Ganaway and another person forcibly stole, while armed with deadly weapons, a vehicle

owned by Victim, and in the course of the robbery hit the Victim with the butt of a handgun; and

further, while St. Louis Metropolitan police officers were arresting Ganaway, he fled for the

purpose of preventing the officers from making the arrest, and in the course thereof created a

substantial risk of serious physical injury or death to other persons, in that, while operating the

fleeing vehicle, he ran red lights and stop signs at speeds of up to 90 miles per hour in a

residential area.

 Prior to trial, Ganaway filed, as relevant to the issues on appeal, a motion to suppress

evidence seized incident to his arrest, which Ganaway contended was unlawful because it

stemmed from an unlawful traffic stop without probable cause, and a motion to suppress any in-

court or out-of-court identification because any such identification would be the product of an

unlawful arrest. Both motions were denied after a hearing. At trial, the following evidence was

adduced.

 Victim was retrieving his phone from his Toyota Corolla (“the Corolla”) at

approximately 3:00 a.m., when two men exited a nearby dark-colored SUV, later identified as a

gray Buick Rendezvous (“the Buick”) and approached him, both armed with what appeared to be

handguns. The men’s faces were partially covered and they were both wearing hoodies, but

Victim could see them from nose to hairline. The men demanded Victim’s possessions, and he

gave them his debit card and the keys to his Corolla. One of the men drove off in Victim’s car

1
 The trial court granted Ganaway’s motion for judgment of acquittal on this count at the close of the State’s
evidence.

 2
while the other man, later identified as Ganaway, drove off in the Buick in which they had

arrived.

 Officer Lesley Holloman with the St. Louis Metropolitan Police Department (“Officer

Holloman”) was approximately 500 feet away from Victim’s Corolla parked in her car in front of

her house, just coming home from work, when she witnessed two men drive past her in the

Buick at approximately 5 mph. She noted the Buick had the new style of Illinois license plate

and it began with A. As she watched, the two men exited the vehicle, approached Victim, and

raised their arms at him, and she immediately called dispatch to report an assault and carjacking

in progress. Shortly after, one suspect drove away in Victim’s Corolla and she attempted to

follow it. While following the Corolla, she observed the Buick driving with a police vehicle in

pursuit and she called dispatch to inform the officers they were following the correct vehicle.

 Officer Steven Pinkerton (“Officer Pinkerton”) and Officer Jaclyn Gubricky (“Officer

Gubricky”) were several blocks away when they heard the dispatch call, and they immediately

responded to the area of the robbery with their emergency lights activated. Officer Gubricky

testified that almost immediately, they saw the Buick coming from the area of the robbery with

its headlights off,2 which made them suspicious. The Buick then turned without signaling the

wrong way down a one-way street. The officers turned to follow the Buick, which then drove

away at an approximate speed of 60 mph in a 25-mph zone. The officers called dispatch to

verify if the vehicle they were following was the one witnessed at the robbery, which Officer

Holloman confirmed, and the officers then gave chase with the intent to arrest the driver for

felony fleeing and to question the driver about the robbery. Officer Gubricky testified that she

2
 At trial and during the motion to suppress, Ganaway argued the video taken by the dashboard camera showed that
his headlights were actually on, not off. The trial court reviewed the video and found it was “difficult to tell whether
or not the car’s highlights were on or whether or not there’s a glare coming from those headlights.”

 3
could not recall using the loudspeaker during the pursuit. For approximately 30 minutes,

Ganaway fled from multiple police vehicles through multiple residential streets and highways,

swerving in lanes, cutting off cars, and running stop signs and traffic signals, until he crashed the

vehicle in a residential area. Ganaway then attempted to flee on foot but was tackled and

arrested. During a search of the Buick, an officer with the evidence technician unit discovered a

loaded firearm next to the driver’s seat, and a credit or debit card on the floor of the front

passenger side with Victim’s name on it.

 Officers immediately returned Ganaway to near the scene of the robbery for a show-up

identification by Victim and Officer Holloman. Victim identified Ganaway as one of the men

who had robbed him. Victim testified he was certain in his identification based on Ganaway’s

clothes and face. Victim also identified his debit card. Officer Holloman was not able to

identify Ganaway but she positively identified the vehicle he was driving based on the Buick’s

color and size and on the new style of Illinois license plate with the first letter A.

 Ganaway testified in his own defense to the following. He did not rob Victim at

gunpoint; rather, he was in the area looking for the new home of his son’s mother. He had just

made a turn when he noticed a police car activate its lights and sirens and speed up behind him.

Upon seeing the police vehicle, he became nervous because, although he was driving a car he

had purchased, he did not have any paperwork and was not the legal owner, and he sped away.

He was scared of the police because he had been a good friend of Michael Brown, who was shot

and killed by police. The police did not announce on their loudspeaker why they wanted him to

pull over or announce any traffic violations, and he did not know why, or if, they were trying to

pull him over. On cross-examination, he agreed that the police were behind him for 30 minutes,

during which time he ran multiple stoplights, ran multiple stop signs, was swerving through

 4
traffic on the freeway, and drove through residential areas at high rates of speed. He also agreed

that even if the police had announced over their loudspeaker the reason they were following him,

he still would not have stopped.

 Ganaway moved for a judgment of acquittal based in part on the variance between Count

V’s charge of resisting an arrest and the verdict director for Count V, which was for resisting a

lawful stop. The trial court found there was a variance between the charge and the verdict

director, but determined the variance was not material or prejudicial. Ganaway objected on these

same grounds to Instruction No. 12, the verdict director for Count V for resisting a lawful stop,

and to Instruction No. 13, the verdict director for Count VI for the associated ACA charge. The

trial court overruled the objections.

 At the close of evidence, the jury found Ganaway guilty of robbery in the first degree,

resisting a lawful stop, and two associated ACA charges. The trial court sentenced Ganaway to

concurrent terms in the Missouri Department of Corrections of ten years for the first-degree

robbery charge, two years for the charge of resisting a lawful stop, and five years each for the

two associated ACA charges. This appeal follows.

 Discussion

 Point I

 In his first point on appeal, Ganaway argues the trial court erred in overruling his Motion

to Suppress and allowing evidence at trial of the seizure both of his person with the resulting

show-up identification and of items discovered in the Buick, because officers did not have

reasonable suspicion or probable cause to stop Ganaway’s vehicle and thus any resulting

evidence was inadmissible as violating the Fourth and Fifth Amendments of the United States

Constitution. We disagree.

 5
 On review, we will only reverse the trial court’s ruling on a motion to suppress if it was

clearly erroneous, which occurs when, after review of the entire record, we are left with the

definite and firm impression that a mistake has been made. State v. Lammers, 479 S.W.3d 624,

630 (Mo. banc 2016). When reviewing a trial court’s ruling on a motion to suppress, we

consider both the evidence presented at the suppression hearing and at trial to determine whether

there was sufficient evidence in the record to support the trial court’s conclusion. State v.

Hosier, 454 S.W.3d 883, 891 (Mo. banc 2015). We defer to the trial court’s factual findings and

credibility determinations, and we consider all the evidence and reasonable inferences therefrom

in the light most favorable to the trial court’s ruling. Id. However, the issue of whether police

conduct, such as a traffic stop, violates the Fourth Amendment is a question of law that we

review de novo. State v. Smith, 595 S.W.3d 143, 145 (Mo. banc 2020).

 The Fourth Amendment of the United States Constitution guarantees the right to be free

from unreasonable searches and seizures. Id.; see also Mo. Const. art. 1, section 15. A seizure

occurs in the context of a traffic stop when “a reasonable person would have believed that he was

not free to leave.” State v. Sund, 215 S.W.3d 719, 723 (Mo. banc 2007) (citation omitted). A

traffic stop based on an officer’s observation of a violation of state traffic laws is a reasonable

seizure under the Fourth Amendment, and any traffic violation, no matter how minor, gives an

officer probable cause to stop a vehicle. Id., see also Smith, 595 S.W.3d at 145. However, if the

traffic stop is not supported by reasonable suspicion or probable cause, it can violate the Fourth

Amendment. See Smith, 595 S.W.3d at 145.

 Ganaway argues that the officers did not have probable cause to stop his vehicle,

specifically citing the conflicting evidence of whether he was driving with his headlights off or

on. He does not challenge the evidence that he turned the wrong way down a one-way road or

 6
that he executed this turn without signaling, both of which were traffic-law violations. See

Section 304.019.1, RSMo.3 (regulating use of turn signals); Section 300.245 (regulating

operation on one-way streets). Even without considering whether Ganaway was driving without

headlights, his turn without signaling and driving the wrong way on a one-way street provided

probable cause for a lawful stop, and the officers did not violate the Fourth Amendment by

initiating a traffic stop on that basis. See Smith, 595 S.W.3d at 145; Sund, 215 S.W.3d at 723.

The trial court did not err in denying the motion to suppress the identification and evidence.

 Moreover, to the extent Ganaway argues he was seized at the time the officers activated

their lights and sirens, this argument does not align with the current state of the law in Missouri.

Rather, seizure occurs when the police have in some way restrained the liberty of a citizen by

physical force or the citizen has yielded to a show of police authority. State v. Hosier, 454

S.W.3d 883, 893 (Mo. banc 2015); State v. Deck, 994 S.W.2d 527, 535 (Mo banc 1999); see also

California v. Hodari D., 499 U.S. 621, 625-26 (1991). Seizure does not occur when police have

instructed a suspect to stop but the suspect flees instead of yielding. Hosier, 454 S.W.3d at 893

(citing Hodari, 499 U.S. at 626 (seizure does not occur when police officer yells stop at fleeing

form that continues to flee)). When the suspect leads the police on a chase rather than submit to

a show of authority, the traffic-law violations during the police chase can provide independent

probable cause for a traffic stop. Deck, 994 S.W.2d at 893-94. The Fourth Amendment does not

protect a fleeing suspect from the admission of evidence discovered incident to a search

conducted after the flight. See Hosier, 454 S.W.3d at 893; Deck, 994 S.W.2d at 894.

 Here, Ganaway was not seized until he was subjected to the application of physical force

by the police after he crashed the Buick and attempted to flee on foot. Ganaway agreed on cross-

3
 All statutory references are to RSMo. (2016), unless otherwise indicated.

 7
examination that he violated numerous traffic laws during his 30-minute high-speed chase.

Thus, even if there had not been probable cause when Officers Pinkerton and Gubricky first

turned their attention to Ganaway, law enforcement had sufficient probable cause to stop

Ganaway for the additional violations committed during the chase. Because there was probable

cause to stop Ganaway at the time he was seized, the stop and subsequent search did not violate

the Fourth Amendment. See Hosier, 454 S.W.3d at 893; Deck, 994 S.W.2d at 893-94.

Accordingly, the evidence seized from the Buick and the identification following his arrest were

the result of a lawful stop and were admissible. The trial court’s denial of Ganaway’s motion to

suppress was not clearly erroneous.

 Point I is denied.

 Point II

 In his second point on appeal, Ganaway argues the trial court erred in overruling his

objections to Instructions 12 and 13 and in entering convictions for Counts V and VI because

there was a fatal variance between the charge of resisting arrest and Instruction 12 for resisting a

lawful stop, in that it failed to provide him with adequate notice to defend himself. We disagree.

 We review claims of instructional error de novo to determine whether the instruction was

supported by the law and the evidence. State v. Eisele, 414 S.W.3d 507, 519 (Mo. App. E.D.

2013). To warrant reversal on instructional error, the party challenging the instruction must

show the instruction misled, misdirected, or confused the jury, and resulted in prejudice, in that

the error materially affected outcome of the case. Id. Reversal is required when the instructional

error was so prejudicial that it deprived the defendant of a fair trial. State v. Zetina-Torres, 482

S.W.3d 801, 810 (Mo. banc 2016).

 8
 The purpose of an indictment is to inform the accused of the charges so that the accused

may prepare an adequate defense. State v. Ellis, 853 S.W.2d 440, 443 (Mo. App. E.D. 1993).

When a crime may be committed by any of several methods, the method in the verdict-directing

instruction must be the same as that charged in the indictment. See id. If the charging document

and verdict-directing instruction submit different methods of committing the crime, there is a

variance. Id. However, the mere fact of a variance between the indictment and jury instruction

does not mean reversible error has occurred. See State v. Lee, 841 S.W.2d 648, 650 (Mo. banc

1992). A variance is not fatal and will not require reversal unless the variance is both material

and prejudices the defendant. State v. Glass, 136 S.W.3d 496, 520 (Mo. banc 2004). A variance

is material when it affects whether the defendant received adequate notice of the charge

presented at trial, and the variance is prejudicial when it affects the defendant’s ability to defend

against the charges. Id.

 Count V charged Ganaway under Section 575.150. Section 575.150 creates the offense

of resisting or interfering with arrest, detention, or stop, and includes multiple methods for

committing the same offense. Section 575.150.1. Here, Count V of the indictment charged

Ganaway with violating Section 575.150 by resisting arrest by fleeing.4 By contrast, Instruction

No. 12, the verdict director for Count V, charged Ganaway with resisting a lawful stop by

fleeing.5 The State concedes that a variance exists between the indictment and the instruction.

4
 The particulars of the indicted charge were that:
 [O]n or about November 23, 2017, in the City of St. Louis, State of Missouri, Steven Pinkerton
 and Jaclyn [Gubricky], law enforcement officers, were making an arrest of defendant and the
 defendant knew or reasonably should have known that the officers were making an arrest, and,
 for the purpose of preventing the officers from effecting the arrest, resisted the arrest of
 defendant by fleeing from the officers and defendant fled in such a manner that created
 substantial risk of serious physical injury or death to other persons in that defendant, while in a
 residential area, ran red lights and stop signs while operating the fleeing vehicle at speeds up to
 90 miles per hour.
5
 Instruction No. 12 stated in full:
 [I]f you find and believe from the evidence beyond a reasonable doubt:

 9
The question, then, is whether the variance was material and resulted in prejudice to Ganaway by

affecting his ability to adequately defend against the charges given to the jury in the instruction.

We find there was no prejudice here.

 The relevant facts here are that the officers were responding with their emergency lights

activated to a reported assault or carjacking when their attention was drawn to the Buick, which

was driving away from the scene of the reported incident with its headlights off. The officers

then witnessed Ganaway immediately turn without signaling the wrong way down a one-way

street. The officers then pulled up behind Ganaway, still with their emergency lights activated,

at which point Ganaway fled. The officers chased Ganaway for 30 minutes with the intention to

stop and arrest him for felony fleeing and to question him regarding the robbery. Ganaway

testified that when the police vehicle pulled up behind him, he fled because he was afraid of

police, because he did not have proper documentation for the Buick, and because the police

never announced on their loudspeaker if and why they wanted him to pull over or announce any

traffic violations.

 Ganaway contends he was unable to prepare adequately to defend against the charge of

resisting a lawful stop because he had prepared a defense for resisting an arrest. The essence of

Ganaway’s defense to Count V for resisting under Section 575.150 was that because the police

 First, that on or about November 23, 2017, in State of Missouri, Jaclyn [Gubricky] and Steven
 Pinkerton were law enforcement officers, and
 Second, that Jaclyn [Gubricky] and Steven Pinkerton were attempting to stop a vehicle being
 operated by defendant, and
 Third, that defendant knew or reasonably should have known that one or more law enforcement
 officers were attempting to stop defendant, and
 Fourth, that the basis for the stop was the defendant committed multiple traffic violations, and
 Fifth, that defendant knew or reasonably should have known of the basis for the stop, and
 Sixth, that for the purpose of preventing the law enforcement officers from making the stop, the
 defendant resisted by fleeing from the officers, and
 Seventh, that defendant fled in such a manner that created a substantial risk of serious physical
 injury or death to other persons in that defendant operated a motor vehicle on city streets
 at high speeds weaving in and out of traffic and violating traffic signals,
 Then you will find the defendant guilty under Count I of resisting a lawful stop.

 10
did not announce over the loudspeaker either that he was under arrest or what reason they had for

stopping him, he did not know why or if the police were trying to stop him or arrest him and

therefore he was not obligated under the law to stop. The Missouri Approved Instruction for

Resisting or Interfering with Arrest includes an element that defendant knew or reasonably

should have known that law enforcement officers were making an arrest of the defendant. MAI-

CR 4th 429.60. Similarly, the Missouri Approved Instruction for Resisting or Interfering with a

Lawful Stop includes both an element that defendant knew or reasonably should have known that

law enforcement officers were attempting to stop the defendant, and also an element that the

defendant knew or reasonably should have known of the basis for the stop. MAI-CR 4th 429.61.

Ganaway’s defense that he did not know if or why the officers were trying to stop him because

they made no announcement over the loudspeaker would, if the jury had believed it, have

provided a defense to either resisting an arrest or resisting a lawful stop. Because Ganaway’s

defense applied to both variations of Section 575.150, the variance between the charge and the

instruction at trial did not prejudice his defense. See Lee, 841 S.W.2d at 651; see also State v.

Tarver, 616 S.W.3d 370, 372 (Mo. App. S.D. 2020) (theory of defense would have been same

under either variance).

 With no prejudice resulting from the variance, the trial court did not err in overruling

Ganaway’s objections to Instruction 12 and in entering a conviction for Count V. Likewise,

because the variance for Count V was not fatal, the trial court did not err in submitting

Instruction 13 for the associated ACA charge in Count VI to the jury.

 Point II is denied.

 Conclusion

 The judgment and sentences of the trial court are affirmed.

 11
 Robin Ransom, Presiding Judge

Sherri B. Sullivan, J., and
Lisa P. Page, J., concur.

 12